UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ADRIAN MATHEWS,

    Plaintiff,

v.                                                Case No. 8:22-cv-01801-TPB-SPF

UNITED PARCEL SERVICE, INC.,

    Defendant.
_____/

## ORDER GRANTING "DEFENDANT UNITED PARCEL SERVICE, INC.'S MOTION FOR SUMMARY JUDGMENT"

This matter comes before the Court on "Defendant United Parcel Service, Inc.'s Motion for Summary Judgment." (Docs. 19; 20). Plaintiff submitted a response in opposition. (Doc. 40). Defendant then submitted its reply. (Doc. 41). Upon review of the motion, response, reply, court file, and record, the Court finds as follows:

## Background

Defendant United Parcel Service, Inc. ("UPS") hired Plaintiff Adrian Mathews in 2014. In 2017, Mathews began his current role as a Package Car Driver, in which he transports packages to and from residential properties. The employer-employee relationship here has not been a smooth one. Mathews has a lengthy disciplinary history at UPS, dating back to March 2018. Prior to March 2020, he had received over ten warning letters and intent to discharge notices from various supervisors. In March 2020, UPS terminated Mathews for excessive

absences after he requested leave under the Family and Medical Leave Act ("FMLA"). In May 2020, Mathews filed a lawsuit against UPS for FMLA interference and retaliation. In October 2020, UPS and Mathews resolved the suit and UPS reinstated Mathews to his position.

Mathews returned to work on October 5, 2020. UPS management subsequently issued warning notices to him for attendance on October 19, 2020, and for failing to wear a seatbelt on November 18, 2020. On January 6, 2021, UPS denied Mathews his accrued vacation leave and optional time off even though the settlement agreement with him required UPS to reinstate him as if he had missed no time at work. On March 16, 2021, UPS issued Mathews another warning for attendance.

On May 12, 2021, officers with the Lake Wales, Florida, Police Department visited Mathews' UPS facility and asked the Center Manager, James Henry, for permission to insert a tracking device into a package as part of a police investigation. Henry agreed, but denied the officers' request to place an undercover officer on the delivery truck because doing so would require clearance from UPS upper management.

On the morning of May 13, 2021, the tracked package was loaded onto the Route 34C delivery truck. Route 34C is an unassigned route, so drivers may select it when it is available. Mathews often chose Route 34C, and he chose it on May 13.[1]

---

[1] In his response, Mathews argues that UPS assigned this route to him. However, in his deposition Mathews stated that he could choose his own route because he was an unassigned driver and he preferred to choose Route 34C when it was available. Because Mathews had the second highest seniority, he was generally able to pick Route 34C unless

It is undisputed that Mathews was not told he was carrying a package that had been tracked by law enforcement. While driving Route 34C, Mathews received a message from dispatcher Carly Henry directing him to reroute and deliver the tracked package before noon. Mathews complied and arrived at the relevant delivery location to deliver the package. After he walked the package onto the porch, armed police officers swarmed the yard and arrested the recipient. Mathews returned to the truck and called Carly Henry to ask about the incident. According to Mathews, Carly Henry laughed hysterically. Unbeknownst to Mathews, James Henry was also listening to the conversation on speakerphone.

Due to the anxiety, stress, and depression caused by this experience Mathews took a leave of absence from UPS on May 14, 2021. Mathews received treatment and returned to UPS as a driver several weeks later. On July 11, 2022, Mathews filed suit against UPS asserting claims for Intentional Infliction of Emotional Distress (Count I) and FMLA Retaliation (Count II). UPS moves for summary judgment, arguing Mathews cannot present evidence to create an issue of fact on his claims for intentional infliction of emotional distress or FMLA retaliation.

## Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A properly supported motion for summary judgment is not defeated by the existence of a factual dispute. *Anderson v. Liberty*

---

it was being used for training. UPS management was aware of his strong preference for Route 34C.

*Lobby, Inc.*, 477 U.S. 242, 249 (1986).  Only the existence of a genuine issue of material fact will preclude summary judgment.  *Id.*

The moving party bears the initial burden of showing that there are no genuine issues of material fact.  *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004).  When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing the existence of genuine issues of material fact.  *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995).  If there is a conflict between the parties' allegations or evidence, the nonmoving party's evidence is presumed to be true and all reasonable inferences must be drawn in the nonmoving party's favor.  *Shotz v. City of Plantation*, 344 F.3d 1161, 1164 (11th Cir. 2003).

## Analysis

### *Intentional Infliction of Emotional Distress (Count I)*

To establish a prima facie case for intentional infliction of emotional distress ("IIED"), a plaintiff must show that "(1) the defendant's conduct was intentional or reckless; (2) the conduct was outrageous, beyond all bounds of decency, and odious and utterly intolerable in a civilized community; (3) the conduct caused emotional distress; and (4) the distress was severe."  *Moore v. Pederson,* 806 F.3d 1036, 1053 (11th Cir. 2015).

The cause of action for IIED is "sparingly recognized by the Florida courts."  *Vamper v. United Parcel Serv., Inc.*, 14 F. Supp. 2d 1301, 1306 (S.D. Fla. 1998).  "A plaintiff alleging IIED faces an extremely high burden, as Florida courts

have repeatedly found a wide spectrum of behavior insufficiently 'outrageous.'" *Parkey v. Carter*, No. 23-22192-CIV, 2023 WL 7523859, at *3 (S.D. Fla. Nov. 14, 2023). The determination whether the conduct alleged meets this high standard is an objective one, and the "the subjective response of the person suffering emotional distress does not control." *Lincoln v. Fla. Gas Transmission Co.*, 608 F. App'x 721, 722 (11th Cir. 2015) (citing *Liberty Mut. Ins. Co. v. Steadman,* 968 So. 2d 592, 595 (Fla. 2d DCA 2007)). The question whether the conduct is sufficiently outrageous to make out a claim of IIED is a question of law for the court. *Id.*

The conduct alleged here, even if proven, does not meet the high standard required by Florida law. Mathews cites no case in which a court found that conduct similar to that UPS allegedly engaged in qualified as sufficiently "outrageous" conduct. In contrast, UPS cites cases in which courts have held that conduct significantly more severe than that alleged here failed to satisfy the requirements for IIED. *See, e.g., Rubio v. Lopez,* 445 F. App'x 170, 175 (11th Cir. 2011) (granting summary judgment on IIED claim where police officer bound arrestee and left him on hot asphalt, resulting in second-degree burns to the face and chest).[2] Mathews

---

[2] *See also Vamper*, 14 F. Supp. 2d at 1306-07 (finding no "outrageous" conduct where a UPS package driver alleged that UPS fabricated a reckless driving charge against him so that UPS could terminate him, did not pay him bonuses other drivers received, allowed a UPS manager to call him the "n" word without consequence, and allowed another employee to physically strike him); *Garcia v. Carnival Corp.*, 838 F. Supp. 2d 1334, 1339 (S.D. Fla. 2012) (finding conduct insufficient where cruise line employees assaulted a passenger and temporarily prevented her from leaving her room); *Blair v. NCL (Bahamas) Ltd.*, 212 F. Supp. 3d 1264, 1269-70 (S.D. Fla. 2016) (finding no sufficiently outrageous conduct where plaintiff's child drowned in a pool advertised as "kid friendly" despite lacking life guards, lifesaving equipment, and personnel prepared to respond to a drowning event).

has thus failed to present evidence to create a genuine issue of material fact on his IIED claim. Accordingly, UPS's motion for summary judgment as to Count I is granted.

*FMLA Retaliation (Count II)*

The parties agree that Mathews' FMLA retaliation claim should be analyzed under the burden-shifting framework used in Title VII cases pursuant to *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* framework, to avoid summary judgment, the plaintiff must offer evidence presenting a prima facia case of retaliation. To establish a prima facie case of retaliation, the plaintiff must show that (1) he engaged in statutorily protected conduct, (2) he suffered a materially adverse action, and (3) the adverse action was causally related to the protected conduct. *See Schaaf v. Smithkline Beecham Corp.*, 602 F.3d 1236, 1243 (11th Cir. 2010).

A materially adverse action is any "conduct by an employer [that] clearly might deter a reasonable employee from pursuing a pending charge of discrimination or making a new one." *Crawford v. Carroll*, 529 F.3d 961, 974 (11th Cir. 2008).[3] The required causal connection may be shown by a "close temporal

---

[3] Both parties appear to agree, and the Court assumes, that the applicable standard for adverse actions in the context of FMLA retaliation claims is the "materially adverse action" standard used in Title VII retaliation claims, which requires "conduct by an employer [that] clearly might deter a reasonable employee from pursuing a pending charge of discrimination or making a new one." *Crawford*, 529 F.3d at 974. Although the Eleventh Circuit has not yet stated that this standard applies to FMLA retaliation claims, it has applied the standard in unpublished decisions, and district courts in this Circuit have done so as well. *See Pennell v. Judd*, No. 8:19-cv-2433-CEH-TGW, 2022 WL 3345630 (M.D. Fla. 2022).

proximity" between the plaintiff's protected expression and the alleged adverse action. *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004). However, "mere temporal proximity, without more, must be very close." *Johnson v. Miami-Dade Cty.*, 948 F.3d 1318, 1327 (11th Cir. 2020). "[I]f there is a substantial delay between the protected expression and the adverse action in the absence of other evidence tending to show causation, the complaint of retaliation fails as a matter of law." *Brisk v. Shoreline Found., Inc.*, 654 F. App'x 415, 416 (11th Cir. 2016) (internal quotation omitted).

If the plaintiff successfully establishes a prima facie case for retaliation, the burden then shifts to the defendant to offer a non-retaliatory reason for its actions. If it does so, the burden shifts back to the plaintiff to demonstrate that the proffered reasons are pretextual. *See, e.g.*, *Batson v. Salvation Army*, 897 F.3d 1320, 1328 (11th Cir. 2018) (ADA retaliation); *Wood v. Calhoun Cty. Fla.*, 626 F. App'x 954, 956 (11th Cir. 2015) (workers' compensation retaliation); *Toliver v. City of Jacksonville*, No. 3:15-cv-1010-J-34JRK, 2017 WL 1196637, at *5 (M.D. Fla. Mar. 31, 2017) (ADA and FCRA disability discrimination).

<u>Sting Operation</u>

Mathews alleges that in May 2021, UPS allowed law enforcement to place a tracking device on a package in the truck he was driving, and to engage in a sting operation to arrest the recipient of the package, all without informing him, in retaliation for his May 2020 FMLA lawsuit. Even if the sting operation constituted a "materially adverse action," it must be recognized that it occurred approximately

one year after the filing of Mathews' discrimination lawsuit in May 2020 as well as some seven months after the conclusion of that suit and his return to work in October 2020.[4]  Accordingly, it lacks the required temporal proximity to the alleged protected conduct.  *See Johnson*, 948 F.3d at 1328 (holding period of nearly two months insufficiently close); *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (holding three to four months insufficiently close); *Wascura v. City of S. Miami,* 257 F.3d 1238, 1248 (11th Cir. 2001) (holding that a "three and one-half month temporal proximity is insufficient to create a jury issue on causation").  Mathews therefore fails to make out a prima facie case of retaliation under the *McDonell Douglas* framework based on the sting operation.

<u>Warning Letters and Vacation Denial</u>

Mathews argues that warning letters he received in late October 2020, November 2020, and March 2021 for attendance and other issues, a denied vacation request in January 2021, and the May 2021 sting operation together constitute a "series" or an "unbroken chain" of adverse employment actions that began shortly after his reinstatement in October 2020.  This series of actions, he argues, establishes the necessary causal connection.

The Court disagrees.  First, even the earliest of these events occurred approximately five months after Mathews filed his prior lawsuit, which is too removed in time to support an inference of causation.  Second, Mathews had

---

[4] Where, as in this case, the alleged protected activity is the filing of a lawsuit, "the relevant date in determining temporal proximity . . . is the *filing* of the lawsuit, not the entry of dispositive orders in the case by the district court."  *See Simpson v. Ala. Dep't of Human Res.*, 501 F. App'x 951, 953 (11th Cir. 2012).

already received numerous warning letters and "intent to discharge" letters even prior to his filing the prior suit in May 2020. This undercuts any inference of causation that otherwise might arise from the warning letters Mathews received after his reinstatement.

Finally, Mathews has presented no evidence that the warning letters caused him any harm, such as impacting his pay or job status, or that in the circumstances of this case they would deter a reasonable employee from engaging in protected conduct. As such, they do not constitute materially adverse actions, and cannot support Mathews' retaliation claim. *See Baroudi v. Sec'y, U.S. Dep't of Vet. Aff.*, 616 F. App'x 899, 903 (11th Cir. 2015) (holding that a causal relationship may be shown by a series of adverse actions only where the "intervening retaliatory acts" are material or substantial); *Barnett v. Athens Reg'l Med. Ctr. Inc.*, 550 F. App'x 711, 715 (11th Cir. 2013) (holding that reprimands and negative evaluations that did not affect the plaintiff's salary or job status were insufficient); *Fratarcangeli v. UPS*, No. 8:04-cv-2812-T-TGW, 2008 WL 821946, at *10-11 (M.D. Fla. Mar. 26, 2008) (holding that a warning letter with no effect on the plaintiff's employment was a "trivial harm" with "no materially adverse effect on the plaintiff.").

The same is true for Mathews' argument that UPS denied him his accrued vacation time and optional time off even though UPS was supposed to reinstate him as if had missed no time. *See Barnett*, 550 F. App'x at 715 (vacation denials were not materially adverse employment actions because they were not a "harm . . . that would have deterred a reasonable employee from making or supporting a charge of

discrimination.").

For the foregoing reasons, Mathews has failed to present a prima facie case of retaliation. Accordingly, UPS's motion for summary judgment as to Count II is granted.

Accordingly, it is hereby

**ORDERED**, **ADJUDGED**, and **DECREED**:

(1) "Defendant United Parcel Service, Inc.'s Motion for Summary Judgment" (Doc. 20) is hereby **GRANTED**.

(2) The Clerk is **DIRECTED** to enter final judgment in favor of Defendant United Parcel Service, Inc., and against Plaintiff Adrian Mathews.

(3) Following the entry of judgment, the Clerk is directed to terminate any pending motions and deadlines, and thereafter close this case.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 23d day of February, 2024.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**